# EXHIBIT P

EX-10.1 2 v205602_ex10-1.htm

Exhibit 10.1

## CONFIDENTIAL SETTLEMENT AGREEMENT

This Confidential Settlement Agreement (this "**Agreement**") is entered into this 14th day of December, 2010 by and among Rothschild Trust Holdings, LLC, a Florida limited liability company ("**Rothschild Trust**") and BP GBL Section 3.4, LLC, a Florida limited liability company ("**BP GBL**" and with Rothschild Trust, collectively the "**Rothschild Parties**"), first party and NeoMedia Technologies, Inc., a Delaware corporation ("**NeoMedia**"), second party. The **Rothschild Parties** and **NeoMedia** are referred to herein as the **Parties.**

## RECITALS

**WHEREAS, NeoMedia** purchased from Loyaltypoint, Inc. (**"Loyaltypoint"**) its rights, title and interest in United States Patents 6,430,554; 6,651,053; 6,675,165 and 6,766,363 and all related foreign and domestic patents and patent applications (but which did not include United States Patent No. 6,101,534 which was not owned by Loyaltypoint), including reissues, reexaminations, extensions, continuations, continuations in part, continuing prosecution applications and divisions of such patents and applications and provisional patent applications that were or would be continuations or continuations in part of such patent and applications, and foreign counterparts to any of the foregoing including but not limited to utility models ("**Loyaltypoint Patents**") pursuant to the Patent Purchase Agreement dated April 8, 2005 ("**Patent Purchase Agreement**");

**WHEREAS,** Loyaltypoint retained the right to a royalty equal to ten (10%) percent of the License Revenue for a period of ten (10) years from the date of the Agreement as defined in Section 3.3 of the **Patent Purchase Agreement**, and a Grant-back License as defined by Section 3.4 of the **Patent Purchase Agreement** (collectively, the "**Loyaltypoint Rights**");

**WHEREAS,** Loyaltypoint subsequently declared bankruptcy, and **Rothschild Trust** purchased the **Loyaltypoint Rights**.

**WHEREAS, Rothschild Trust** assigned all of its rights and interest in the **Loyaltypoint Rights** to BP GBL;

**WHEREAS, Rothschild Trust** specifically represents that it has not assigned some or any of its rights and interest in the **Loyaltypoint Rights** to any other entity or individual other than to **BP GBL**;

**WHEREAS**, **Rothschild Trust** filed a complaint against **NeoMedia** in Miami-Dade County, Florida (Case No. 08-45049 CA 20), seeking monetary relief for **NeoMedia**'s alleged failure to pay royalties under the **Loyaltypoint Rights** ("**Lawsuit**");

**WHEREAS**, **NeoMedia** denied, and does deny, all of the allegations set forth by the **Rothschild Trust** in the **Lawsuit**; and

**WHEREAS**, for purposes of avoiding costly litigation and in order to reach an amicable resolution of the potential claims and disputes by and among the **Parties**, the **Parties** desire to compromise fully, and finally settle and resolve all disputes among them, including those relating to the **Lawsuit**.

**NOW, THEREFORE**, in consideration of the promises, the performance of the covenants and agreements hereinafter contained, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the **Parties** to this **Agreement** hereby represent, warrant, consent and agree as follows:

1.  **Adoption of Recitals.**  The **Parties** hereto adopt the above recitals as being true and correct, and they are incorporated herein as material parts of this Agreement.

2.  **Settlement Benefits.**

    A.    **NeoMedia** agrees to deliver shares of its common stock to **BP GPL** in accordance with the terms set forth on **Exhibit 1** attached hereto and made a part hereof.

    B.    *Assignment of Loyaltypoint Rights and Loyaltypoint Patents by Rothschild Trust, BP GBL and Rothschild to NeoMedia*.  **Rothschild Trust, BP GBL** and Leigh M. Rothschild, individually **("Rothschild")** hereby assign to **NeoMedia** all rights, title and interest they have in the **Loyaltypoint Rights** and the **Loyaltypoint Patents** to **NeoMedia**.  For clarification purposes, the **Parties** hereto hereby acknowledge and agree that neither the **Rothschild Parties** nor **Rothschild** are transferring any rights, title or interest in and to United States Patent No. 6,101,534.

    C.    *Execution of Assignment.*  In order to record in the United States Patent and Trademark Office ("USPTO") the Assignment of the Loyaltypoint Rights as set forth in Section 2(B) hereof, and to resolve any issues arising from the recordation of the "**Loyaltypoint Sale Document**" (as hereinafter defined) at the USPTO, **Rothschild Trust**, **BP GBL** and **Rothschild** agree to execute the **Assignment** attached hereto as **Exhibit 2** to this **Agreement**. The **Assignment** shall be fully executed and delivered to **NeoMedia's** counsel upon the full execution of this **Agreement**. **NeoMedia's** counsel shall hold the **Assignment** in escrow until each party constituting the "**Rothschild Group**" (as defined on **Exhibit 1** attached hereto) receives the "**Settlement Shares**" (as defined on **Exhibit 1** attached hereto) in accordance with Section 2(A) of this **Agreement**. The "**Loyaltypoint Sale Document**" means the Bill of Sale between Edwin K. Palmer, Chapter 7 Trustee of the Bankruptcy Estate of Loyaltypoint, Inc., and Rothschild Trust Holdings, LLC, dated Oct. 2, 2007, and recorded July 17, 2008 at USPTO Reel 021243/Frame 0674.

    D.    *Stipulation of Dismissal with Prejudice*.  Within five (5) days after the parties constituting the **Rothschild Group** receive the **Settlement Shares**, **NeoMedia** shall file with the Court a Joint Stipulation of Dismissal, with prejudice, of the Lawsuit, with each **Party** to bear its own fees and costs, a copy of which is attached hereto as **Exhibit 3**.  A signed Joint Stipulation of Dismissal shall be delivered to **NeoMedia's** counsel upon execution of this Agreement, to hold in escrow until five (5) days after the parties constituting the **Rothschild Group** receive the **Settlement Shares**.

    **E.**   *ICAP Ocean Tomo LLC.* The **Rothschild Parties** shall have sole responsibility to pay all commissions, fees or any other monies owed to ICAP Ocean Tomo LLP in connection with ICAP Ocean Tomo Auction - Lot 54 - BP GBL Section 3.4, LLC. All monies owed ICAP Ocean Tomo LLP must be paid in full, and the **Rothschild Parties** must deliver a full general release from ICAP Ocean Tomo LLC, a copy of which is attached hereto as <u>**Exhibit 4**</u>, to **NeoMedia's** counsel upon execution of this **Agreement**. NeoMedia's counsel shall hold such general release in escrow until five (5) days after the parties constituting the **Rothschild Group** receive the **Settlement Shares**. The **Rothschild Parties** specifically agree that **NeoMedia** will have no obligation to deliver any **Settlement Shares** in accordance with Section 2(A) above until five (5) business days after the **Rothschild Parties** fulfill their obligations pursuant to this Section 2(E).

    **3.**   <u>**Release by the Parties.**</u>

    **A.**   *Rothschild Parties' and Rothschild Release to NeoMedia.* **Rothschild Parties**, their successors, assigns, agents, officers, shareholders, members, parents and subsidiaries and **Rothschild** (collectively **"3A Releasors"**) unconditionally and irrevocably release **NeoMedia**, its successors, assigns, employees, officers, directors, shareholders, agents, parents and subsidiaries (collectively **"3A Releasees"**) from all known or unknown claims, debts, liabilities, breaches of contract, compensation, claims for profits, claims for expenses, demands, damages, actions, causes of action, or suits of any kind or nature whatsoever, if any, that the **3A Releasors** presently have, for any event, occurrence, or omission that has occurred from the beginning of the world with respect to the **Loyaltypoint Rights**, as well as the **Loyaltypoint Patents**. This Release includes, but is not limited to, any claims that were raised, or could have been raised in the **Lawsuit**, all rights, claims and interest in the **Loyaltypoint Rights** (including but not limited to (i) the rights in the Grant-back license set forth in section 3.4 of the **Patent Purchase Agreement** and (ii) the rights in the royalties set forth in section 3.3 of the **Patent Purchase Agreement**), and with respect to the **Loyaltypoint Rights**, all losses, debts, liabilities, breaches, claims and causes of action based on breach of contract, accounting, misrepresentation, fraud, property damage, personal injury, disclosure of trade secrets and proprietary information, conflicts of interest, tortious interference, breach of fiduciary duties, demands, costs, loss of services, expenses, compensation, contribution, attorneys' fees, and all compensatory, consequential, liquidated, special and punitive damages. The **Rothschild Parties** and **Rothschild** acknowledge that **NeoMedia** has relied on the representations and promises in this **Agreement** and this Release (described herein in Section 3) in agreeing to the Settlement Benefits (described above in Section 2(A).)

    **B.**   *NeoMedia's Release to the Rothschild Parties and Rothschild.* **NeoMedia,** its successors, assigns, agents, officers, shareholders, members, parents, subsidiaries and otherwise related individuals and entities (collectively **"3B Releasors"**) unconditionally and irrevocably release the **Rothschild Parties**, their successors, assigns, agents, employees, shareholders, members, managers, parents, subsidiaries, officers and directors, as well as **Rothschild** (collectively **"3B Releasees"**) from all known or unknown claims, debts, liabilities, breaches of contract, compensation, claims for profits, claims for expenses, demands, damages, actions, causes of action, or suits of any kind or nature whatsoever, if any, that **3B Releasors** presently have or could have, for any event, occurrence, or omission that has occurred from the beginning of the world with respect to the Loyaltypoint Rights, as well as the Loyaltypoint Patents. This Release includes, but is not limited to, any claims that were raised or could have been raised in the **Lawsuit**, and all losses, debts, liabilities, breaches, claims and causes of action based on breach of contract, accounting, misrepresentation, fraud, property damage, personal injury, disclosure of trade secrets and proprietary information, conflicts of interest, tortious interference, breach of fiduciary duties, demands, costs, loss of services, expenses, compensation, contribution, attorneys' fees, and all compensatory, consequential, liquidated, special and punitive damages. **NeoMedia** acknowledges that the **Rothschild Parties** and **Rothschild** relied on the representations and promises in this **Agreement** and this Release (described herein in Section 3) in agreeing to the Settlement Benefits (described above in Section 2(B) and (C).)

4.     **Representations, Warranties and Indemnification – Rothschild Trust, BP GBL and Rothschild**.  **Rothschild Trust**, **BP GBL** and **Rothschild** represent and warrant that **BP GBL** holds its rights and interest in the **Loyaltypoint Rights** totally free and clear, unencumbered by claims, licenses, options, rights or other interests of other parties.  **Rothschild Trust** and **Rothschild** represent and warrant that they have no right and/or interest in the **Loyaltypoint Rights**, other than pursuant to **Rothschild Trust**'s interest in **BP GBL**.  **Rothschild Trust** and **BP GBL** have the full, right, power and authority to enter into this Agreement and assign the **Loyaltypoint Rights**.  **Rothschild Trust, BP GBL** and **Rothschild** agree to indemnify **NeoMedia** to the full extent permitted by law for any breach of this provision.

5.     **Covenant Not to Sue.**

**A**.     **Rothschild Parties**, their successors, assigns, agents, officers, shareholders, members, parents and subsidiaries and **Rothschild** (collectively **"5A Releasors"**) agree that they will not commence any lawsuits, arbitrations or other proceedings or actions against **NeoMedia**, its successors, assigns, employees, officers, directors, shareholders, agents, parents and subsidiaries (collectively **"5A Releasees"**) regarding any claims with respect to the **Loyaltypoint Rights** and the **Loyaltypoint Patents**, save and except for any future breach or violation by **NeoMedia** of this **Agreement**.  **5A Releasors** further represent that they have no suits, claims, charges, complaints or demands of any kind whatsoever currently pending against **5A Releasees** with any local, state, or federal court or any governmental, administrative, investigative, civil rights or other agency or board other than the **Lawsuit** described in this **Agreement**.  **5A Releasors** covenant and agree never, individually or with any person or in any way, directly or indirectly, to commence, participate in, aid in any way, prosecute or cause or permit to be commenced or prosecuted against **5A Releasees** any action or other proceeding based upon any claim, demand, cause of action, obligation, damage, or liability with respect to the **Loyaltypoint Rights** and the **Loyaltypoint Patents**, that occurred or arose at any time prior to and including the date of **5A Releasors'** execution of this **Agreement**.  **5A Releasors** represent and agree that they have not and will not make or file or cause to be made or filed any other claim, charge, allegation, or complaint, whether formal, informal, or anonymous with respect to the **Loyaltypoint Rights** and the **Loyaltypoint Patents**, with any governmental agency, department or division, whether federal, state, or local, relating to **5A Releasees**, excepting claims, charges, allegations or complaints which arise from future breaches or violations by the **5A Releasees** of the terms and conditions of this **Agreement** or other obligations of the **5A Releasees** that are not the subject matter of the Release stated above in Section 3A of this **Agreement**.  **5A Releasors** further agree that if any person, organization or other entity should bring a claim against **5A Releasees** involving any matter with respect to the **Loyaltypoint Rights** and **Loyaltypoint Patents**, **5A Releasors** shall not join in, or benefit from, any such action.

4

**B.** **NeoMedia**, its successors, assigns, agents, officers, shareholders, members, parents and subsidiaries (collectively **"5B Releasors"**) agree that they will not commence any lawsuits, arbitrations or other proceedings or actions against the **Rothschild Parties**, their successors, assigns, employees, shareholders, members, managers, parents, subsidiaries, officers and directors and **Rothschild** (collectively **"5B Releasees"**) regarding any claims with respect to the **Loyaltypoint Rights** and the **Loyaltypoint Patents**, save and except for any future breach or violation by the **Rothschild Parties** and **Rothschild** of this **Agreement. 5B Releasors** further represent that they have no suits, claims, charges, complaints or demands of any kind whatsoever currently pending against **5B Releasees** with any local, state, or federal court or any governmental, administrative, investigative, civil rights or other agency or board other than the **Lawsuit** described in this **Agreement. 5B Releasors** covenant and agree never, individually or with any person or in any way, directly or indirectly, to commence, participate in, aid in any way, prosecute or cause or permit to be commenced or prosecuted against **5B Releasees** any action or other proceeding based upon any claim, demand, cause of action, obligation, damage, or liability with respect to the **Loyaltypoint Rights** and the **Loyaltypoint Patents**, that occurred or arose at any time prior to and including the date of **5B Releasors'** execution of this **Agreement. 5B Releasors** represent and agree that they have not and will not make or file or cause to be made or filed any other claim, charge, allegation, or complaint, whether formal, informal, or anonymous with respect to the **Loyaltypoint Rights** and the **Loyaltypoint Patents**, with any governmental agency, department or division, whether federal, state, or local, relating to **5B Releasees**, excepting claims, charges, allegations or complaints which arise from future breaches or violations by the **5B Releasees** of the terms and conditions of this **Agreement** or other obligations of the **5B Releasees** that are not the subject matter of the Release stated above in Section 3B of this **Agreement. 5B Releasors** further agree that if any person, organization or other entity should bring a claim against **5B Releasees** involving any matter with respect to the **Loyaltypoint Rights** and the **Loyaltypoint Patents**, 5B Releasors shall not join in, or benefit from, any such action.

**6.** **Acknowledgement of Consideration**. The **Parties** hereto each acknowledge and agree that the Settlement Benefits (Section 2 above), Releases (Section 3) and the Covenants Not To Sue (Section 5 above) set forth in this **Agreement** are being exchanged for the benefit of each of the **Parties** executing this **Agreement**, and that, but for the agreements made hereunder, they have no entitlement to the consideration exchanged pursuant to this **Agreement**.

**7.** **Knowing and Voluntary Waiver.** The **Parties** hereto each acknowledge and agree that the waiver of the **Parties'** claims provided in this Agreement is knowing and voluntary and that this waiver is a part of this **Agreement**, which has been written in a manner calculated to be, and which is, understood by each of the **Parties**.

**8.** **Non-Admission.** Nothing in this **Agreement**, including the above Settlement Benefits, are to be construed as an admission of wrongdoing or of any liability by any of the **Parties**. The execution of this **Agreement** shall not be deemed, construed or interpreted, in any way, to be an admission by any **Party** regarding liability, damages or the validity of any claim or defense, which any **Party** has asserted or may assert. If this **Agreement** is not fully and finally consummated by its valid and binding execution date, then no statements contained herein shall be used for any purpose whatsoever against any of the **Parties**.

5

**9.** **Cooperation**. The **Parties** agree to execute and deliver any and all documents that may be necessary to effectuate the terms agreed to herein.

**10.** **Plain Meaning and Headers**. This **Agreement** shall be interpreted in accordance with the plain meaning of its terms and not for or against the drafter's rights hereunder. The headers describing the contents of the provisions are simply for identification purposes and shall not be construed as a substantive part of the provision.

**11.** **Agreement the Product of Negotiation.** This **Agreement** is the product of negotiation between the **Parties**. In the event of a dispute concerning the interpretation of this **Agreement** or of any of its terms or provisions, the **Agreement** shall be deemed to have been drafted jointly by the **Parties**, and shall not be more strictly construed against any of the **Parties**.

**12.** **Waiver.** No waiver of a breach of any provision of this **Agreement** shall constitute a waiver of a breach of any other provision of this **Agreement** or of a prior or subsequent breach of the same provision. No extension of time of performance of an act or obligation under this **Agreement** shall constitute an extension of time of performance of any other act or obligation.

**13.** **No Assignment; Authority.** The **Parties** represent and warrant that no person other than the signatories hereto had or has any interest in the matters referred to in this Agreement, that the **Parties** have the sole right and exclusive authority to execute this Agreement, and that the **Parties** have not sold, assigned, transferred, conveyed, or otherwise disposed of any claim, demand or legal right that is the subject of this **Agreement**. **NeoMedia** represents and warrants that Michael Zima has been duly authorized to execute this **Agreement** on behalf of **NeoMedia** and that no consent, authorization, approval or order is required to be obtained by NeoMedia for the execution, delivery and performance of this Agreement by NeoMedia, except as has been obtained prior to the execution hereof. The **Rothschild Parties** hereby represent and warrant that **Rothschild** has been duly authorized to execute this Agreement on behalf of the **Rothschild Parties** and that no consent, authorization, approval or order is required to be obtained by the **Rothschild Parties** for the execution, delivery and performance of this Agreement by the **Rothschild Parties**, except as has been obtained prior to the execution hereof.

**14.** **Governing Law and Jurisdiction**. This Agreement shall be deemed to be made and entered into in the State of Florida, and shall in all respects be interpreted, enforced and governed under the laws of Florida, without giving effect to the conflict of laws principles of Florida law. For purposes of enforcing this Agreement, the **Parties** expressly consent to the exclusive jurisdiction and venue of any court of competent jurisdiction located in Miami-Dade County, Florida, and they expressly waive any claims or defenses of *forum non conveniens* to jurisdiction and venue in Miami-Dade County, Florida. **THE PARTIES EXPRESSLY WAIVE ANY AND ALL RIGHTS TO A JURY TRIAL.**

15.     **Opportunity to Consult with Counsel.** The **Parties** hereby represent and acknowledge that they have been provided with the opportunity to discuss and review the terms of this **Agreement** with their respective attorneys before signing it and that they are freely and voluntarily signing this document in exchange for the benefits provided herein. The **Parties** further represent and acknowledge that they have been provided a reasonable period of time within which to review the terms of this **Agreement**.

16.     **Entire Agreement.** This **Agreement** is the entire agreement between the Parties relating to the subject matter of this **Agreement**, and fully supersedes any and all prior agreements and understandings, both written and oral, between the **Parties**. The **Parties** acknowledge that no one has made any representations or promises to them, other than those contained in or referred to in this **Agreement**, and that they are not relying on any representations or promises not set forth herein in executing this **Agreement**.

17.     **Modification or Amendment.** No amendment, change or modification of this Agreement, or waiver of any provision of this **Agreement**, shall be valid unless it is in writing, signed by each of the **Parties** or by his or its respective successors and/or assigns. The **Parties** agree not to make any claim at any time or place that this **Agreement** has been orally modified in any respect whatsoever.

18.     **Severability.** Should any provision of this **Agreement** be declared or determined by any court of competent jurisdiction to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby and said illegal or invalid part, term or provision shall be deemed not to be a part of this **Agreement** and all other valid provisions shall survive and continue to bind the **Parties**.

19.     **Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, and together which shall constitute one and the same agreement. This Agreement and any amendment hereto may be signed by electronic signature, such as facsimile transmission or electronic mail by PDF format, and any such electronic signature shall be deemed to be an original for all purposes. The Parties agree to execute two (2) originals of this Agreement.

20.     **Execution of Agreement.** The **Parties** to this **Agreement** each acknowledge and agree that in deciding to execute this **Agreement**:  (a) the **Parties** relied entirely on their own judgment and that of any legal counsel; (b) no facts, evidence, event or transaction currently unknown to the **Parties**, but which may hereinafter become known, shall affect in any way or manner the final, unconditional nature of this **Agreement**; (c) the execution of this **Agreement** is a completely knowing and voluntary act; (d) the **Parties** understand the terms of this **Agreement**; (e) the **Parties** have been advised to consult with legal counsel and have been provided with time to consult with legal counsel prior to the execution of this **Agreement**; (f) all promises made to the **Parties** in connection with this **Agreement** or as inducement to sign same expressly are set forth in full in the other paragraphs of this **Agreement**.

7

21.     **Prevailing Party**. In the event that it shall be necessary for any **Party** to this **Agreement** to institute legal action to enforce any of the terms and conditions or provisions contained herein, or for any breach thereof, the prevailing party shall be entitled to reimbursement of their costs and reasonable attorney's fees.

22.     **Notices**. All documents or instruments to be sent, provided or delivered under this **Agreement** shall be sent to the following addresses:

        A.     **Rothschild Parties.**
                Rothschild Trust Holdings, LLC
                1108 Kane Concourse, Suite 310
                Bay Harbor Islands, FL 33154
                Attn.: Jay Howard Linn

                With a copy to:

                Feingold Schechter P.A.
                3858-S Sheridan Street
                Hollywood, FL 33021
                Attn.: Robert A. Feingold, Esq.
                (P) 954.967.2575
                (F) 954.967.2576

        B.     **NeoMedia.**
                NeoMedia Technologies, Inc.
                Two Concourse Parkway, Suite 500
                Atlanta, Georgia 30328
                Attn. Michael W. Zima, CFO

                With a copy to:

                K&L Gates LLP
                Wachovia Financial Center – Suite 3900
                200 South Biscayne Boulevard
                Miami, Florida 33131
                Attn.: Jonathan Morton, Esq.
                (P) 305.539.3357
                (F) 305.358.7095

23.     **Confidentiality.**

        A.     Except as provided in subsection (B) of this Section 23, the **Parties** agree that the terms and conditions of this **Agreement** are and shall remain confidential.

8

B.      Nothing in subsection (A) of this Section 23 shall prohibit any **Party** from disclosing terms and conditions of this **Agreement**: (i) to the extent that the such party is legally compelled (by oral questions, interrogatories, request for information or documents, subpoena, civil investigative demand or similar process) to disclose any of the terms hereof (the "**Confidential Information**"); (ii) to its respective attorneys, auditors, lending institutions, or other agents or representatives that the disclosing Party in good faith believes should have access to such **Confidential Information**; and/or (iii) **NeoMedia** disclosing certain aspects of this Agreement on **NeoMedia** securities filings, to the extent required by the United States Securities and Exchange Commission; provided that, in connection with any such disclosure, (a) a disclosing party shall only disclose such **Confidential Information** as is required to be disclosed in connection with the foregoing, (b) a disclosing party shall provide the other party with prompt and advance written notice of any such intended disclosure so that such other party has a reasonable opportunity to limit such disclosure, or (if applicable, and to the extent reasonable practicable) seek a protective order or other appropriate remedy to prevent such disclosure and (c) a disclosing party shall use its reasonable efforts to seek confidential treatment (consistent with the terms hereof) by the third party to whom such disclosure is made.  The **Parties** acknowledge that money damages would not be a sufficient remedy for any breach of the provisions of this Section 23 and that the non-breaching party shall be entitled to equitable relief, without proof of damages or the posting of a bond, to enjoin a breach or threatened breach of this Section 23.  Such equitable relief shall be in addition to, and not in lieu of, such other and further relief as the injured party may be entitled to.

C.      The obligation not to disclose **Confidential Information** shall not apply to any part of such **Confidential Information** that (i) is or becomes generally known to the public other than by acts of a party in contravention of this **Agreement**; (ii) is disclosed to a party by a third party, unless such **Confidential Information** was obtained by such third party directly or indirectly from a party on a confidential basis which is known or made known to such party; (iii) prior to disclosure under this **Agreement**, was already in the possession of the disclosing party, unless such **Confidential Information** was obtained directly or indirectly from the other party on a confidential basis; or (iv) is independently acquired or developed by a disclosing party other than by acts of a party in contravention of this **Agreement**.

**IN WITNESS WHEREOF**, each of the Parties having so agreed to the terms stated herein, have set their hands the date and year below so written.

**ROTHSCHILD TRUST HOLDINGS, LLC**

By:    /s/ Leigh M. Rothschild
Name:   Leigh M. Rothschild
Title:    Managing Member
Date:    December 14, 2010

**BP GBL SECTION 3.4, LLC**

By:    /s/ Leigh M. Rothschild
Name:   Leigh M. Rothschild
Title:    Manager
Date:    December 14, 2010

**AGREED AND ACCEPTED TO WITH RESPECT TO HIS RIGHTS AND OBLIGATIONS UNDER SECTIONS 2(A), 2(B), 2(C), 3, 4, 5 and EXHIBIT 1**

/s/ Leigh M. Rothschild
**Leigh M. Rothschild**

**AGREED AND ACCEPTED TO, SOLELY IN ITS CAPACITY AS ESCROW AGENT THIS 14th DAY OF DECEMBER, 2010**

**K&L GATES, LLP**

By:    /s/ Jonathan Morton
Name:   Jonathan Morton
Title:    Partner

**AGREED AND ACCEPTED TO WITH RESPECT TO THEIR RESPECTIVE RIGHTS AND OBLIGATIONS AS A MEMBER OF THE ROTHSCHILD GROUP UNDER SECTIONS 2A, 2B, 2C, 2D, 2E, 23 AND EXHIBIT 1 OF THIS AGREEMENT THIS 14th DAY OF DECEMBER, 2010**

/s/ Leigh M. Rothschild
**Leigh M. Rothschild**

**NEOMEDIA TECHNOLOGIES, INC.**

By:    /s/ Michael W. Zima
Name:   Michael W. Zima
Title:    CFO and Secretary
Date:    December 13, 2010

10

**ICAP Ocean Tomo LLC**

By:          /s/ David Schmidt
Name:        David Schmidt
Title:       Director of Research
Address:     200 W. Madison, 37th Floor
             Chicago, Il  60606
(P): 312-327-8001
(F): 312-327-4401

**Feingold Schechter P.A.**

By:          /s/ Robert A Feingold
Name:        Robert A. Feingold
Title:       President

11